HARDOUIN, PLAINTIFF AND RESPONDENT, v. KRAJEWSKI-PESANT COMPANY, DEFENDANT AND APPELLANT..

APPEAL from the District Court of San Juan, Section 1, in an Action of Debt.

No. 1238.—Decided July 8, 1915.

APPEARANCE—SUMMONS AND RETURN—JURISDICTION—WAIVER.—By a general and voluntary appearance of the defendant all objections to the summons and return and to the jurisdiction, of the court over the person of the defendant are· waived.·

CONTRACT FOR .SERVICES—RECIPROCAL OBLIGATIONS—DAMAGES.—In a contract for services in which both parties contract reciprocal obligations failure on the part of either, without just cause, to carry out his contractual obligations renders .him liable to the other for the damages caused thereby.

ID.—REMUNERATION—DAMAGES.—In a contract for services it is necessary that such services be rendered in order that a right to receive compensation therefor may exist; and in case of the dismissal of the servant before the expiration of such contract, he has a right to indemnification only when he is dismissed without just cause.

ID.—DAMAGES—BREACH OF CONTRACT.—The right of an employee engaged to perform personal services to quit the service of his employer rests upon the same basis as the right of his employer to discharge him from further service. If the quitting in the one case, or the discharge in the other, is in

violation of the contract between the parties, whichever party is injured by the breach of the contract has his action for damages, and this is his appropriate remedy.

Id.—Damages—Profits.—Indemnity for damages includes not only the amount of the loss which may have been suffered, but also the profits which may not have been realized.

Id.—Damages—Measure of Damages.—The measure of damages sustained by reason of failure on the part of an employer to comply with a contract for services is, *prima facie*, the compensation stipulated in the contract, subject to reduction upon proof by the defendant as to the amount the employee did gain or could have gained during the time the contract remained in force.

Id. — Damages — Breach of Contract — Evidence — Reduction of Amount Claimed.—In an action for damages for breach of a contract for services it devolves upon the defendant to prove that the plaintiff secured or could have secured another position, and while the discharged employee is bound to look for other work or take the risk of having the amount claimed reduced by the amount which he could have earned, he is not required to look for work of a different nature, or in another locality, or in the service of an unsuitable employer.

Id.—Commission—Agent.—The principal must pay the agent the commission premium unless there be an agreement to the contrary.

The facts are stated in the opinion.

*Messrs. Martínez & Iriarte* for the appellant.

*Mr. José E. Benedicto* for the respondent.

Mr. Justice del Toro delivered the opinion of the court.

This is an appeal from a judgment of the District Court of San Juan, Section 1, in favor of the plaintiff for the sum of $4,535.82, with lawful interest thereon from the date when the complaint was filed and the costs, expenses and attorney fees.

The complaint contained the following allegations:

"1. That the plaintiff is of age, a civil engineer and resident of this city; that the defendant is a company organized in the State of New York and doing business in this island, where it is represented by its agents, Successors of L. Villamil & Co., Limited, with an office in this city.

"2. That by a contract entered into on June 1, 1910, between the Krajewski-Pesant Company and the plaintiff the latter was appointed the selling agent of the said company in the Island of Porto Rico for a period of one year beginning July 1, 1910, subject to extension by mutual agreement of the parties.

"3. That by the said contract the plaintiff was to receive a salary of $300 monthly beginning January 1, 1911, and also a commission of 6 per cent on the value of the machinery sold to the Central Vannina of Río Piedras and 3 per cent on the sales of machinery made by the said company in this island through its said selling agent, plaintiff Hardouin.

"4. That since the date of the execution of the said contract the plaintiff has been willing at all times to comply with and carry out faithfully and well each and all of the obligations imposed upon him by the said contract.

"5. That without any cause therefor the defendant company has refused to comply with or carry out the said contract of agency and sale of machinery in this island and on December 28, 1910, communicated to the plaintiff its determination to rescind and annul the said contract.

"6. That, according to plaintiff's information and belief, the defendant company sold to the Central Vannina of Río Piedras during the year 1910, when the said contract was in force, machinery to the value of $45,595, but refused to pay to the plaintiff his commission of 6 per cent on the amount of said sales.

"7. That the failure of the defendant company to comply with the contract has caused the plaintiff the loss of his salary of $1,800 for six months and his commission of 6 per cent on the $45,595, the amount of the sales made by the said company to the Central Vannina, said commission amounting to $2,735, and these amounts, together with interest thereon, aggregate a total of $4,950, which is the sum at which plaintiff lays the damages caused him by the defendant company by its failure to comply with the said contract."

The defendant filed a "motion to quash the summons" on the ground that it was served by leaving a copy thereof with one of the members of the firm of L. Villamil & Company of San Juan, who was not authorized to represent the defendant corporation, and later answered the complaint as follows:

"1. The defendant denies that it is a company organized in the State of New York and that it has been doing business in this island as such. It also denies that it is represented in this island by the Successors of L. Villamil & Co., Limited, and that they are its agents.

"2. The defendant specifically ·denies that it has entered into any contract ·with plaintiff Camilo Hardouin and denies generally all the other material allegations made in the said amended complaint.

"3. As a further defense to the complaint filed in this action, the defendant alleges that this court has not acquired jurisdiction over the defendant, which neither has nor has had a lawful domicile in Porto Rico or a resident agent in this island authorized to accept the service made upon the defendant, and that the service of the summons made upon the Successors of L. Villamil & Co., Limited, is not sufficient to give this court jurisdiction over the defendant."

A day having been set for the trial, both parties appeared and the plaintiff introduced the following evidence:

1. A certificate showing that the defendant company is not registered in the office of the Secretary of Porto Rico;

2. A copy of a complaint filed by the defendant company through "its agents, Successors of L. Villamil & Co.," against the plaintiff;

3. A copy of a part of a ·certain petition for an injunction filed by the defendant "through its agents, Successors of L. Villamil & Co.," and of the affidavit to the same, beginning as follows: "I, José León Núñez, managing partner of Successors of L. Villamil & Co., as agents of Krajewski-Pesant Co. of New York * * * ";

4. A receipt signed by "Successors of L. Villamil & Co., as agents of Krajewski-Pesant Co.";

5. A translation into Spanish of a letter originally written in French, as follows:

"Krajewski-Pesant Co., San Juan, P. R., June 1, 1910. Mr. C. Hardouin, San Juan, P. R. Dear Sir: In accordance with our conversation of this date, in the name of the Krajewski-Pesant Co. I offer you the position of agent of this company as my successor, beginning July 1, 1910, which position you accept, subject to the following conditions: Fixed salary from January 1, 1911, $300 monthly; commission on all business of the Krajewski-Pesant Co. in Porto Rico, 3 per cent; ·it being agreed that the salary shall be merged in the commission when the latter exceeds $4,000 during a sugar season.

"As a consequence of this agreement you agree to take the necessary steps in order that the Krajewski-Pesant Co. may receive the order for all the material for the central at Río Piedras under the conditions stated in my letter of April 28 which allows a special commission of 6 per cent on the total amount of $169,400 in that transaction instead of the commission of 3 per cent above mentioned.

"For my part I agree to have this agreement confirmed by the Krajewski-Pesant Co. upon my arrival at New York.

"This contract shall be renewable annually at the will of both parties. Very truly yours, (Signed) Alfred Musy. Accepted: (Signed) C. Hardouin. The foregoing is a true translation of the original letter in French. (Signed) L. Ledia."

6. Another letter as follows:

"Krajewski-Pesant Co., New York. June 15, 1910. Mr. Camilo Hardouin, P. O. Box 991, San Juan, P. R.

"Dear Sir: We have discussed with Mr. Alfred Musy the proposal, offered by him that you represent us jointly in Porto Rico during the year 1911. We wish to state that said proposal meets with our approval. We confirm below our understanding.

"We will pay you the sum of $300 (Three hundred dollars) per month, from the 1st of January, 1911, and thereafter for six months; all traveling expenses to be paid by you. We will also allow you a commission of 3% (Three per cent) on all the sales made by you and Mr. Musy in Porto Rico. Should this commission exceed the sum of $4,000 (Four thousand dollars) per year, it is understood that your salary will be deducted from this amount.

"Yours truly, Krajewski-Pesant Co. (Signed) J. A. Pesant."

7. Another letter reading:

"Dec. 28, 1910. Mr. Camilo Hardouin, Río Piedras, P. R.

"Dear Sir: We beg to hereby notify you, that due to your recent hostile attitude and your behavior towards this company, it makes it an utter impossibility for us to have you act as our selling agent, as were our intentions from and after January 1st, 1911.

"We greatly regret that your recent procedure towards us makes this action on our part necessary.

"Yours very truly, (Signed) Krajewski-Pesant Co., J. A. Pesant, Gen. Manager."

8. Testimony of the plaintiff, to which we shall refer in our analysis of the evidence, and

9. Testimony of the attorney for the plaintiff stating that it was impossible for him to present a certificate attesting that the defendant was registered in the office of the Secretary of State of the State of New York due to his not having sent the full amount of the fees required for the said certificate. Based on this testimony the trial was postponed over the objection of the defendant.

The trial was proceeded with on the day set therefor and the plaintiff introduced the following evidence:

10. A certificate issued by the Secretary of State of New York attesting the articles of incorporation of the Krajewski-Pesant Company;

11. A letter reading as follows:

"Krajewski-Pesant Co., New York, July 30, 1910. Mr. Camilo Hardouin, San Juan, P. R.

"Dear Sir: We have received your letter of July 17th, with order for some erection material for your account, which we will ship to you as promptly as possible.

"Referring to what you tell us about representation in P. R. we have referred this to Mr. A. Musy, as your understanding of the payment of commission is not exactly what we understand ourselves. However, we have no doubt that this can easily be settled, and for this reason we have asked Mr. Musy as he is the one who made the arrangement with you.

"The balance of your 6% commission on $179,000, namely $740,000 (*sic*), will be paid to you in due time on completion of the work.

"We are sending you by this mail foundation plan of the building, to enable you to begin work on this at once next week, we will send you foundation plan of the boilers.

"Wishing you good success, we remain, Yours truly, Krajewski-Pesant Co. (Signed) J. A. Pesant."

12. Testimony of the plaintiff.

The defendant made the letters of June 1 and 15, 1910, introduced by the plaintiff, a part of his own evidence and in addition introduced the following:

1. A letter reading as follows:

"November 2, 1910.  Mr. C. Hardouin, Río Piedras, P. R.

"Dear Sir: I have received your letter of October 22d.  The $740 commission which remains due will be paid to you by Messrs. Villamil & Co.  I have written to them by this mail in regard to this matter.  Referring to the commission on traveling cane (crane?) which has been sold to Vannina, this machinery is outside of the contract and therefore will be paid at the end of the year, as is customary with our agent.  In regard to the terms of agreement, we must say that the wording is not quite clear.  What is meant is this: We will pay you a monthly salary of $300 (Three hundred dollars) from the 1st of January, 1911, to the 30th of June, 1911; all traveling expenses to be paid by you.  We will also allow you a commission of 3% (Three per cent) on all the sales by you and Mr. Musy ,in Porto Rico.  When your commission on the total of the yearly sales, on basis of 3%, exceed your salary of $1,800 we will pay you a 3% (Three per cent) commission on any sum in excess of said salary.  I have not written to you about this before, as I understood from Mr. Musy that he had explained to you this matter fully.  I hope that the erection of the machinery is going up without difficulty, and that everything will be ready in time.  Yours very truly, Krajewski-Pesant Co.  (Signed) J. Pesant."

2. Another letter dated November 15, 1910, reading as follows:

"I have the honor to acknowledge receipt of your favor of the 2d instant and I thank you for having arranged the matter of the $740.  In accordance with your instructions, the house of Villamil has informed me that they have credited the said amount to my account.  As to the terms of our contract regarding the agency of your company in Porto Rico, if I correctly understand the offer you made me in English I am to be allowed a commission of 3 per cent on all business done in Porto Rico and you guarantee me a minimum of $300 during the time stipulated by us each year.  Example:

"1. Yearly commission @ 3%_____ $3,700
        Sum payable to Mr. Hardouin_____  3,700
"2. Yearly commission @ 3%_____  2,800
        Sum payable to Mr. Hardouin_____  3,600

    "(Supposing the stipulated period to be 12 months.)

"The minimum of $300 monthly will be paid to me monthly during the number of months fixed in each year.  The time stipulated for first year being six months, in the two cases above stated the

amounts payable during first year would be $3,700, or $2,800 respectively.    As agreed upon, the first year begins July 1, 1910, and ends June 30, 1911, the contract being renewable yearly.    I shall thank you to inform me whether my understanding coincides with yours so as to close the matter.''

3. Two certificates executed before a notary public whereby J. McCall, former secretary of the defendant, states that the company ceased to do business and hold property in May, 1912, and assigned all its property, rights and interests to another distinct corporation incorporated in the State of Delaware in the said month of May, 1912.

3. Testimony of José León Núñez, a member of the firm of L. Villamil & Co., stating in substance that the firm of which he is a member is a mere fiscal agent of the defendant. A part of his testimony, copied literally, is as follows:

''He states that he has not acted as agent of the new corporation. That the said new corporation, or the two consolidated corporations, continued to do business in Porto Rico and that he has represented said consolidated corporation.''

In rebuttal the plaintiff introduced in evidence his own testimony and the case was then submitted to the court which, as stated at the beginning, on May 29, 1914, rendered judgment in favor of the plaintiff.

In its brief the defendant corporation, the appellant, contends that the trial court committed two errors, namely:

1. In overruling the motion to quash the service of the summons.

2. In holding it to be proven that the defendant entered into a contract with the plaintiff whereby it agreed to pay him $300 monthly from January, 1911, to June, 1911, and to allow him 3 per cent commission on all sales made in the island, as well as to pay him 6 per cent commission on the total value of the machinery sold to the Central Vannina.

Let us examine the first error relative to whether the district court acquired jurisdiction over the person of the defendant.

In our opinion it is not necessary to consider whether the summons was served properly or not. A consideration of the acts of the defendant itself during the suit is sufficient to conclude that it submitted to the jurisdiction of the court. The defendant answered the complaint on the merits and took part directly in the trial, and jurisprudence is unanimous that in these circumstances the party so acting cannot plead lack of jurisdiction on the part of the court for defects in the service of the summons.

"It is sufficient in this case to say that the defendants, by pleading to the merits of the case, waived any objection they might have had to the alleged defect in the process and its service." *Desmond* v. *Superior Court of San Francisco,* 59 Cal., 274-275.

"Conceding that the summons was defective, the defendant, by pleading to the merits, waived his objection to all defects therein." *Sears* v. *Starbird,* 78 Cal., 231.

"A party appearing specially, and moving to quash the summons on account of insufficiency or irregularity of the same, if he afterwards enters general appearance by filing demurrer or answer, or both, waives any irregularity or insufficiency of the summons." *Morris* v. *Miller,* decided by the Supreme Court of Idaho on April 6, 1895, and reported in 40 Pac. Rep., 60.

"Filing an answer to the merits waives any objection to the summons or to the jurisdiction of the court over the person of the defendant. By a general voluntary appearance all objections to the summons and return thereof and to the jurisdiction of the court over the person of the defendant are waived, and the filing of a demurrer or answer to the complaint constitutes such an appearance." *Union Pacific Ry. Co.* v. *De Busk,* decision of the Supreme Court of Colorado, reported in 3 L. R. A., 350.

See also the case of *Hernaiz, Targa & Co.* v. *Vivas,* 20 P. R. R., 99.

Let us consider the second error. We have reviewed carefully all the evidence introduced and agree with the trial court that the existence of the contracts alleged in the complaint cannot be denied.

In his sworn testimony at the trial the plaintiff explained the origin of the transactions. He said that he was one of

the promoters of the Central Vannina; that he made the plans and took the preliminary steps for its organization. That upon learning this the engineers of dealers in construction materials of the United States "kept after him and made him propositions"; that one of these engineers was Musy, the representative of the Krajewski-Pesant Company, who said to him that he wished to retire to the United States because his family did not like to live in Porto Rico and that if he would give him the order of the Central Vannina he would allow him 6 per cent thereon and appoint him agent of the Krajewski-Pesant Company in his (Musy's) place. The plaintiff accepted and thereupon Musy wrote him the letter of June 1, 1910, which we have transcribed.

The said letter refers to two separate transactions, namely, the general agency of the Krajewski-Pesant Company in Porto Rico based on a monthly salary of $300 and a commission of 3 per cent on sales made, and the sale of the material for the construction of the Central Vannina in Río Piedras, P. R.

We will consider the evidence relating to the first transaction. In our opinion the contract was set out in writing with sufficient clearness in the letter of June 1, 1910, and was confirmed by the defendant corporation in its letter of June 15, 1910, and accepted by the plaintiff.

The evidence also shows (plaintiff's testimony) that the plaintiff was always disposed to comply with the contract and that his failure to sell materials for the defendants in Porto Rico from January 1, 1911, to June 30, 1911, was due to the action of the defendants in terminating his agency, as appears from the letter which the defendant company wrote to plaintiff on December 28, 1910.

Could the defendant company act in the manner in which it did without becoming liable to the plaintiff?

The contract we are considering may be regarded as a hiring of services and therefore sections 1486 et seq. of the Civil Code are applicable. Both parties contracted recip-

rocal obligations and if one of them without just cause failed to carry out his contractual obligations, he is bound to indemnify the other for the damages thereby caused him.

Section 1068 of the Civil Code provides that those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and *those who in any manner whatsoever act in contravention of the stipulations of the same,* shall be subject to indemnify for the losses and damages caused thereby.

In the case of *Portela* v. *Porto Rican-American Tobacco Company,* 4 P. R. R., 29, this court held that—

"In a contract for services it is necessary that such services be rendered in order that a right to receive compensation therefor may exist; and in case of the dismissal of the servant before the expiration of such contract he has a right to indemnification only when he is dismissed without just cause."

And in the opinion delivered in the case of *Núñez* v. *Soto Nussa,* 14 P. R. R., 190, we said:

"And the right of an employe engaged to perform personal services to quit the services of his employer rests upon the same basis as the right of his employer to discharge him from further personal service. If the quitting in the one case, or the discharging in the other, is in violation of the contract between the parties, whatever party is injured by the breach of the contract has his action for damages, and this is his appropriate remedy."

In the case of *Padró* v. *Valdés,* 16 P. R. R., 309, this court expressed itself as follows:

"Complainant in this court maintained that his action was one of negligence, but the averment of the complaint is a failure to perform a contract; in other words, a breach of contract. For the breach of this contract the complainant, at most, would have been entitled to recover a month's wages, if all that he alleges in his complaint were true, but in no case could he have recovered for the other things on which he relies, because it was always within the legal rights of the defendant to dispense with the services of the complainant at the expiration of any one month. The complainant did not allege nor attempt to prove a contract of services for a longer period."

Therefore, according to law and jurisprudence the right to demand an indemnity is plain. But have damages been proved?

Section 1073 of the Civil Code provides as follows:

"Indemnity for losses and damages includes not only the amount of the loss which may have been suffered, but also that of the profit which the creditor may have failed to realize, reserving the provisions contained in the following sections."

What were the unrealized profits in this case? We have examined the jurisprudence of the Supreme Court of Spain and have failed to find any decision which answers that particular question. In *Padró* v. *Valdés* the opinion of this court was in conformity with American jurisprudence which we consider applicable because it is substantially in harmony with the statutory provisions.

Summarized by Tiffany, the said jurisprudence is as follows:

"Where the contract of employment is for a definite term, and the principal without just cause revokes the agent's authority or otherwise terminates the employment, the agent is entitled to the usual remedies for breach of contract. Like a servant who is wrongfully discharged, he may pursue either of two remedies: (1) He may treat the contract as rescinded and sue his employer upon a *quantum meruit* for any services actually rendered, based upon an implied or quasi contract; (2) he may maintain an action upon the original contract to recover damages for the loss resulting from its breach.

"If he elects the latter remedy, he may sue at once and recover the probable damages for the breach, or he may wait until expiration of the term, and sue for the actual damages he has sustained. Whether he sues at once, or not until after expiration of the term, the measure of damages is *prima facie* the amount of remuneration provided by the contract, but it is open to the defendant to reduce the amount of the recovery by proof of the amount which the agent in the one case might have earned by the exercise of reasonable diligence in seeking employment in similar business, and in the other

case by the amount which, in the interim, he has actually earned or which he might have earned with reasonable diligence. The burden rests upon the defendant to show that the plaintiff has or might have secured other employment. But while it is the duty of the discharged employe to seek other employment, at the risk of having his recovery reduced by the amount which he might thereby have earned, he is not bound to seek employment of a different character or in a different locality or with an objectionable person.

"It was formerly held in England that a servant or agent who was wrongfully discharged might elect to treat the contract as continuing, and by holding himself in readiness to perform until expiration of the term of employment then have the right to recover his wages for the term, upon the ground of constructive service. This doctrine has been repudiated in England, and generally in the United States, although it prevails in some States. By the generally approved doctrine, however, the employé, unless he elects to treat the contract as rescinded, is confined to an action for breach of contract; and while in such an action the stipulated remuneration is, *prima facie,* the measure of recovery, this may be reduced, as has been explained, by the amount of what he has or ought to have earned." Tiffany on Agency, pp. 448–451.

In view of all the foregoing, we must conclude that the plaintiff really has the right recognized by the trial court, *i. e.,* to recover as a remuneration for the damages sustained the unrealized salary for the six months during which the contract would have remained in force but for the action of the defendant, inasmuch as the latter failed to introduce any evidence to show that the conduct of the plaintiff was such that it was compelled to act in the manner in which it did, or that the plaintiff earned, or could have earned, a specific amount which should be deducted from the said salary.

We will now examine the evidence relating to the second transaction. During the introduction of plaintiff's evidence the following occurred:

"*Plaintiff.*—Says that he has the two estimates; if the court admits the evidence on this point. That he had submitted to the court

the first estimate in which the construction of the Central Vannina was agreed upon for $169,400 and that later another new estimate was made amounting to $212,000.

"*Defendant.*—Admitted that the first estimate was for $169,400, which was afterwards increased to the aforesaid amount, but what it contends is that in the letter alleged to contain the contract between the parties to this suit, it is said: 'You agree to give the firm of Krajewski-Pesant Co. (the order for) the material for the sugar factory at Río Piedras on the basis of a special commission of 6 per cent on a total of $169,400.''

As will be seen, there is no doubt that the first estimate for the construction of the Central Vannina amounting to $169,000 was later increased to $212,000, which is explained by the plaintiff's testimony to the effect that the first estimate was made for a factory with a grinding capacity of 500 tons of cane per day and it was decided later to increase the productive capacity thereof, and this naturally increased the cost of the machinery.

The fact that the sum of $169,400 was fixed in the letter of June 1, 1910, as the amount on which the commission should be calculated certainly introduces an element of doubt in construing the contract. But this doubt vanishes when it is borne in mind that it was also stated in the said letter that the plaintiff agreed to take the necessary steps to arrange that the *order for all* the material for the sugar factory at Río Piedras should be given to the firm of Krajewski-Pesant Company. The trial court so understood it and gave expression to its understanding in the following words:

"In construing that contract we reach the conclusion that at the time of its execution neither party had in mind to stipulate for a commission on a specific amount but on the total value of the machinery which might be sold, and the said amount was fixed in the contract because it represented the total estimate for the Central Vannina at the time the said conract was executed."

After an examination of the letter of June 15, 1910, it cannot be maintained that it contains a clear ratification of the

second transaction which we are considering. If the plaintiff's evidence had been confined to the introduction of those two letters, we are of the opinion that judgment could not have been rendered in his favor on the second transaction. But other documents were introduced, namely, the letter of July 31, 1910, which the defendant corporation wrote to the plaintiff, and the letter of November 2, 1910, also from the defendant and introduced in evidence by the defendant itself.

Analyzing these two letters in the relation they bear to that of June 1 and to the testimony of the plaintiff, it is observed that the plaintiff received about $10,000 as the 6 per cent commission on the sale of material for the Central Vannina, calculated on the original estimate of $169,000, and that later the plaintiff claimed a larger sum from the defendant on the ground that the sale amounted to $179,000, instead of $169,000, and the defendant corporation agreed to pay the 6 per cent on that excess. This action on the part of the defendant shows that even it construed the contract in the manner alleged by the plaintiff. On the other hand, if it is admitted that the final estimate amounted to $40,000 instead of $10,000 more than the original estimate, we fail to see how it can refuse logically to pay the commission on the actual difference between the first and the second estimates. "The principal shall be obliged to pay the agent the commission premium, unless there is an agreement to the contrary." Article 277 of the Code of Commerce.

In view of all the foregoing we are of the opinion that the judgment appealed from is just and should be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.